## Case No. 4,371.

The ELLA WARLEY.

[Blatchf. Pr. Cas. 207.][1]

District Court, S. D. New York. Sept. 4, 1862.

BETTS, District Judge. In this case an order for the appraisal of the cargo of arms had been given in behalf of the United States, but the appraisal made by the appraisers having been withdrawn, the United States attorney gave notice to the proctor for the claimants that he would move for the appointment of new appraisers.

The objections taken by the counsel for the claimants to the authority of the court to appraise the property seized, and to transfer it to the United States at the appraised value, were renewed on this motion; and the position was restated that the property could only be properly disposed of by the court by public auction.

By strict law, enemy property captured by a belligerent in time of war becomes the property of the capturing power, and may be appropriated by it to its own use. Wheat. Int. Law, c. 2, § 5. But, in relation to property captured as prize, there has been universally and immemorially recognized by the maritime law of nations, an established method of determining, through the agency of courts of justice created by the capturing

[1] [Reported by Samuel Blatchford, Esq.]

power, whether the capture be or be not lawful prize. Chit. Law Nat. c. 3. The courts of the United States adopt the law of nations in its modern state of purity. Ware v. Hylton, 3 Dall. [3 U. S.] 199, 281. The prize law is administered in the United States conformably to principles recognized in the English jurisprudence at the time of the adoption of the constitution. Jennings v. Carson, 4 Cranch [8 U. S.] 23, 24, note; Brown v. U. S., 8 Cranch [12 U. S.] per Story, J., 137, 139. The practice in the United States courts under the confederation, and in the tribunals of most maritime nations, is of similar purport and effect. 5 Wheat. Append. [18 U. S.] 52; Brown v. U. S., 8 Cranch [12 U. S.] 130, 131, per Story, J. In England, the prize vests in the lord high admiral, and not in the crown. 2 Brown's Civ. & Adm. Law, 56. In the United States it becomes the property of the government (The Dos Hermanos, 10 Wheat. [23 U. S.] 306), but in each country there are special regulations, under the prize acts, qualifying the public interest in prizes, and regulating the distribution of their proceeds.

Both parties are substantially actors in prize suits, both demanding from the court the thing in contest (Jennings v. Carson, 4 Cranch [8 U. S.] 2), and each has power, after an issue, to carry out the procedure to final judgment. Yet the captors are effectively the parties coming before the court, primarily, as owners and possessors of the property. They demand a judgment, confirming the incipient right acquired by seizure, and rendering it an absolute ownership at law. The decree would thus become one of transfer and conveyance to the captors, of the property arrested, by confiscation; but, with a view to ulterior rights in the value seized, it being partible among the captors, the property is not assigned, by judgment, to the captors in kind, but, under the rules of procedure in this court, is converted into money, and the money is distributed in aliquot shares.

Judge Story, in his summary of the law of prize, seems to have given to the decision in The Copenhagen, 3 C. Rob. Adm. 178, an operation beyond the range of that case. The case only related to the legal rights of a claimant, and had no reference to those of the captors (1 Wheat. Append. 502, note); and in two decisions rendered by the circuit court of the United States in Massachusetts (The Argo [Case No. 516]; The Diana [Id. 3,876]) the denial of the right to bail captured property was made only as against the claimants, and the ruling was based upon the case of The Copenhagen, which was supposed to be so limited by Sir William Scott. The privileges or restrictions as to captors are not mentioned in that case, and it appears that both by the English and American practice, a delivery of prize property by sale and bail is permitted in cases of reasonable necessity. The Falcon, 6 C. Rob. Adm. 194; The Ara-

bella [Case No. 501]; 2 Wheat. Append. 51–53. It is not material to this proceeding which interpretation of the rule of bailing prevails, only so far as it touches the rights of parties prosecuting as lawful possessors and owners of property under arrest. No decision questions the competency of a prize court to bail or sell prize property before condemnation, which is in a perishing or perishable state, reserving the proceeds to be adjudicated to the true owner. Such power is just as absolute as that of a direct appropriation of it by the captors, subject to like conditions, and it must necessarily result that it is to be executed by the court under advisement, according to its judgment of the most expedient method of performing the duty. In numerous cases which have already occurred, and been heretofore acted upon by this court, property captured in the Gulf of Mexico, and otherwise distant from this port, has been adjudged to the use of the United States, on report of the naval commander making the capture, and of a sworn appraisement of its value; and in those instances it would be physically impracticable to subject the property to an auction sale, or to delivery on bail.

I retain the conviction that the government possesses the legal right of claiming a direct appropriation to public use of captured property, and that the courts are bound to carry such demand into execution, according to the usual course of procedure before it, and that the course proposed by the order moved for in this suit is allowable and proper.

Order accordingly.